**UNITED STATES of America,**
**Appellant/Cross–Appellee,**

v.

**Adrian F. SEARCY, Appellee/Cross–**
**Appellant.**

**Nos. 01–1867SI, 01–1873SI.**

United States Court of Appeals,
Eighth Circuit.

Submitted: Nov. 14, 2001.

Filed: March 28, 2002.

Langston, on the brief), for appellant/cross-appellee.

Brent D. Rosenberg, argued, Des Moines, IA, for appellee/cross-appellant.

Before BYE, RICHARD S. ARNOLD, and RILEY, Circuit Judges.

RICHARD S. ARNOLD, Circuit Judge.

This case is about a claim of sentencing entrapment. The defendant, Adrian Searcy (appellee in this Court) pleaded guilty to possession of cocaine base (crack) with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). A sentencing hearing was held at which evidence was taken from both sides. The District Court rejected Mr. Searcy's claim that, before commission of the crime, he had been predisposed to sell only powder cocaine. The Court imposed a sentence of 110 months in prison, to be followed by four years of supervised release, plus the mandatory special assessment of $100.

On appeal to this Court, Mr. Searcy argued, among other things, that the District Court had employed the wrong legal standard in deciding his claim of sentencing entrapment. This Court agreed. *United States v. Searcy*, 233 F.3d 1096 (8th Cir.2000). In our view, the District Court had incorrectly taken into account whether the government's conduct in negotiating with Mr. Searcy for the sale of crack had been outrageous. We held, relying mainly on *United States v. Berg*, 178 F.3d 976 (8th Cir.1999), that the sentencing-entrapment analysis must focus on the defendant's predisposition, not on whether the government's conduct had been outrageous. "[T]he government's conduct is relevant in a sentencing entrapment analysis, but only insofar as it provides the inducement." *Searcy*, 233 F.3d at 1101.

Clifford R. Cronk, III, Asst. U.S. Atty., Rock Island, IL, argued (Inga Bumbary-

Accordingly, the case was remanded to the District Court for resentencing, with instructions to base its decision exclusively on the defendant's predisposition or lack thereof to distribute crack cocaine.

On remand, another sentencing hearing was held. At the conclusion of the hearing, the Court upheld the defendant's position and imposed a new sentence, this time treating all of the drugs that had been sold as powder cocaine, rather than crack. The new sentence was 68 months in prison, the same four years of supervised release, and the same mandatory assessment. The United States now appeals, claiming that the District Court's finding that "[l]aw enforcement officers overcame defendant's resistance to cooking and distributing crack cocaine rather than powder cocaine," *United States v. Adrian F. Searcy*, CR No. 98–200 (S.D. Iowa, Memorandum filed March 26, 2001, p. 2), is clearly erroneous. After considering the entire history of the case, we agree. We think the District Court was right the first time in the result it reached. The case will be remanded with instructions to resentence the defendant in accordance with the terms of the sentence as originally imposed.

I.

Andre Watkins was a crack dealer in the Quad Cities area of Illinois and Iowa. Leonard Mendoza, a special agent of a drug task force, approached Mr. Watkins to see if he would agree to act as an informant. Watkins agreed. At Mendoza's request, Watkins approached the defendant Searcy. He believed he could buy powder cocaine and crack from Searcy. Watkins wore a recording device. Every drug-related conversation between Watkins and Searcy was recorded.

Before January 15, 1998, the day of the initial approach, Searcy had sold powder cocaine. He had also converted powder cocaine to crack, using it himself, and had distributed crack as a gift at parties. He had not sold crack before. At the first conversation, Searcy "stated that he doesn't do that, he doesn't sell crack cocaine ...." Sent. Tr. 40–41. During this conversation, Searcy appears to have said that he and another man, Carl Wright, were "cooking some rocks ...." *Id.* at 76. During this same meeting, Searcy showed no reluctance at all to sell Watkins crack in the future. Gov. Ex. 1 (transcript of tape recording). No definite agreement on quantity and price was made at the time, however.

Watkins and Searcy had several telephone conversations. On February 15, 1998, Searcy said he was agreeable to selling a half ounce the following day. Gov. Exhibit 2 at 3. Watkins failed to appear at the scheduled meeting, however. When he called Searcy on February 17, Searcy wanted to meet right away to complete the deal. Searcy said someone was available to cook the cocaine into crack, Gov. Ex. 2 at 7, and told Watkins that someone else had offered to buy the half ounce. Gov. Ex. 6 at 2–3. Michael White, a co-defendant who was present during some of the meetings and conversations between Searcy and Watkins, testified that he saw Searcy with an ounce of powder obtained from Scott Swope. Sent. Tr. 90. It was cooked into crack, and half an ounce went to Watkins. He and Searcy talked about the idea for a while, and then decided to go ahead and do it, and cooked the cocaine into crack. According to White, he and Searcy did this for a profit, not because they were afraid of Watkins, or because he had pressured them.

Searcy's own account differed only in emphasis. He initially told Watkins he did not cook powder into crack, and did not know how to do so, but he said this because he thought "crack" was something

entirely different from cocaine cooked into a form that can be smoked. Sent. Tr. 157. He later found out that these substances are identical. *Ibid.* He and Mike White then processed powder cocaine into what they hoped would be half an ounce of crack (it turned out to be less). *Id.* at 161. Until Watkins's request, he had never been involved in cooking cocaine for distribution to other persons. *Id.* at 162. He told Watkins that someone else would be willing to buy the crack in an effort to ensure that Watkins would buy it, because, if he had not done so, Searcy and White would have been out the money they spent on buying the cocaine.

According to the transcripts of the tape recordings of conversations, Searcy told Watkins that his product was so good that his customers would be able to use it in small bits. Gov. Exhibit 3 at 4. He said he was going through with the first sale, notwithstanding that he would not make a profit, because he wanted to keep business going with Watkins. Gov. Exhibit 6 at 10. He suggested to Watkins that he give out free samples, because his customers would like it so much they would come back for more. *Id.* at 12.

Finally, on February 19, Searcy delivered to Watkins what he claimed to be one-half ounce of crack. Actually, it was only slightly more than one-fourth ounce. Watkins complained and asked for his money back. Searcy refused, but offered to cook another half ounce. Gov. Ex. 5 at 11. He then tried to negotiate the sale of a full ounce to Watkins. *Id.* at 14–17. Watkins said he would be in touch. Later that day, Watkins offered Searcy $2,800 for three ounces. Gov. Exhibit 5 at 18. Searcy bargained the price up to $3,200. *Id.* at 18–21. The next day, February 20, 1998, White and Searcy arranged to meet Watkins. When they arrived, they were arrested. Searcy had 28.6 grams of crack in his possession.

In explaining the sentence imposed after the first sentencing hearing, the District Court said, among other things:

> I do not agree with the conduct of Mr. Mendoza and such other government agents as may believe that they should do what they can to ensnare people in criminal conduct, but in this case I find that their—that is, Mr. Searcy's conduct was not because he was talked into doing it. His conduct he brought upon himself.

Sent. Tr. 314. As we have said, the Court imposed a term of 110 months. In doing so, it addressed the defendant as follows: "Mr. Searcy ... you played fast and loose with the truth in this court." *Id.* at 325.

On remand, the District Court found that "Mr. Searcy was not predisposed to deal in crack cocaine." Resent. Tr. 70. The Court found: "Law enforcement officers overcame defendant's resistance to cooking and distributing crack cocaine rather than powder cocaine." *United States v. Adrian F. Searcy,* CR No. 98–200 (S.D. Iowa, Memorandum filed March 26, 2001, page 2). At the resentencing hearing, the District Court explained its reasoning as follows:

> There's a substantial record here, and based on the decision of the Court of Appeals, which I believe was a determination on close review that it believed there had been a strong case made out for sentencing entrapment, I find that whether the defendant or the government had the burden on the issue of whether there was inducement and predisposition, I find that there was inducement, even though not by outrageous government conduct, and that Mr. Sear-

cy was not predisposed to deal in crack cocaine.

Resent. Tr. 70.

The United States now brings this appeal. (Mr. Searcy also cross-appeals, on grounds we shall discuss later.) The question presented is whether the defendant was entrapped, or, more precisely, whether he was predisposed to deal in crack cocaine at the time the government's informant, Watkins, approached him. Was the finding of no predisposition, made on remand, clearly erroneous?

## II.

■ As we held on the prior appeal, *United States v. Berg, supra,* states the standard for entrapment:

Unlike the defense of outrageous conduct, which focuses on the government's conduct, the entrapment defense focuses on the defendant's predisposition to commit the crime in question. The defendant must show that the government induced the defendant to commit the crime. [The question then becomes whether] the defendant was predisposed to commit the crime, apart from the government's inducement.

178 F.3d at 980 (citations and internal quotation marks omitted). *Berg* discussed entrapment in the context of a defense to a criminal charge, while the issue in this case is raised as a sentencing factor, but the basic concepts are the same.

■ As we also held on the prior appeal, the Sentencing Guidelines recognize sentencing entrapment as a basis for a downward departure. Application Note 12 to U.S.S.G. § 2D1.1 (1998) states that the sentencing court "shall exclude" from its calculation the amount of drugs that flow from sentencing entrapment. Logically, the same principle would apply to the type of drugs. Application Note 12 states, in relevant part:

If ... the defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.

As the Application Note clearly provides, the burden of proof on this issue is on the defendant. He or she must establish by a preponderance of the evidence a lack of predisposition to commit the crime. (We assume that "inducement" occurred here, since the sale occurred after an initial approach to the defendant by a government agent.)

■ Did the defendant meet this burden? We think not. It is true that Mr. Searcy had never sold crack before, that the government pursued a purchase of crack, not powder cocaine, from him, and that, at the beginning of the initial contact, defendant stated that "he doesn't sell crack cocaine." Sent. Tr. 40–41. It is also true that five or six conversations between Watkins and Searcy took place before the first sale of crack occurred. On the other hand, Searcy had been present during the manufacturing of crack in the past, had used it, and had distributed it as gifts. Significantly, he displayed no reluctance to sell crack to Watkins in the very first conversation they had, a conversation that contained no particular signs of pressure or coercion on Watkins's part. The actual contracts for sale and sales did not take place until later, but there was no particular difficulty in getting Mr. Searcy to entertain the idea. It is also true that Watkins got Searcy to agree to a sale of larger quantities, and that he did so because Mr.

Mendoza, the government agent, wanted the quantity to be sufficient to secure a severe sentence. We have previously questioned the wisdom of this sort of activity on the part of the government, *United States v. Berg, supra,* 178 F.3d at 981, but this sort of thing must remain, within broad limits, a policy choice by the Executive Branch. "In any case," as we said in *Berg, ibid.,* "no great amount of persuasion was required." Searcy was not at all unwilling to sell the three ounces, and in fact negotiated for a higher price.

█ For the reasons given, considering the record as a whole, it is our definite and firm conviction that Mr. Searcy was "predisposed" to sell crack in the quantities actually sold, as that term is used in the sentencing entrapment conduct. We are well aware of the great deference which we owe to the District Court as the finder of fact. For example, the court could perhaps have disbelieved (though it did not say so) the testimony of all the witnesses except the defendant himself, and found, on that basis, that there was no predisposition (though, it must be said, the defendant's own testimony doesn't make that strong a case). However, we have here not only the in-person testimony of the government's witnesses, but also the transcripts of recorded conversations between Watkins and Searcy. No one questions the authenticity or the accuracy of the transcripts, nor did the District Court ever say it was not accepting them for any reason. When the transcripts are put into the balance, Mr. Searcy's case becomes weak indeed, because they show how little inducement was required to get him into the crack business. We conclude that it is our duty to reverse the District Court's finding and to remand this case for resentencing.

## III.

█ A few additional comments seem appropriate in light of the unusual procedural history of the case. As we have indicated, on remand the District Court referred expressly to the opinion of this Court on the first appeal. That opinion stated, among other things:

> In this regard, we believe the district court's ruling denying entrapment may have been flawed. As we have mentioned, the evidence shows that Searcy never dealt crack until Watkins, working as a government informer, coaxed Searcy to sell crack.

*Searcy,* 233 F.3d at 1100 (footnote omitted). It was the duty of the District Court, on remand, to interpret and apply this Court's first opinion, as, indeed, it is our duty to do so now under the law-of-the-case doctrine. It is possible, however, that this Court feels freer, as a practical matter if not a legal one, to interpret its previous opinions than the district courts do. In any event, the remark made on the previous appeal about "coaxing" is, in our opinion, nothing more than dictum. It is not the job of appellate courts to find facts. Sometimes a fact may be agreed to, or at least uncontested, and the appellate court can proceed on that basis. Sometimes, but rarely, a fact can be newly "found" by an appellate court if a finding the other way by a trial court would be clearly erroneous. Neither of those exceptions exists here, nor did the prior panel say that they did. Notwithstanding its comments about the facts as they appeared at the appellate level, the panel's mandate was to remand the case to the District Court to make a new finding of fact on the issue of predisposition, and then to decide the issue of sentencing entrapment accordingly. It may be that our prior panel thought Searcy was entrapped, or thought that the District Court would so find on remand.

This would in no way detract from the District Court's status as the initial factfinder.

Our duty on this appeal is to apply the law established on the prior appeal, and we believe we have done so. Our further duty is to review the factfindings of the District Court under the customary clearly-erroneous standard. We have done that, too, and have concluded, with some reluctance, that the finding of no predisposition must be reversed.

### IV.

Mr. Searcy has filed a cross-appeal. At the first sentencing, he says (correctly), the District Court left out of its calculation of quantity drugs Searcy had for personal use, as opposed to distribution. But the second time, the defendant argues, the District Court included those drugs in its calculation. The cross-appeal argues that this decision was error. We need not address the merits of the argument. Because we uphold the government's position on the main appeal, the case must go back for reinstatement of the original sentence, including the District Court's action with respect to drugs held for personal use. The issue thus drops out of the case, and defendant will receive the benefit of the District Court's previous ruling on this subject.

### V.

For the reasons given, the judgment of the District Court, imposing a new sentence of 68 months, is vacated, and the case is remanded to that Court with instructions to reimpose the original sentence. The cross-appeal is dismissed as moot.