# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3196

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Wyatt J. Ellison, | * | |
| | * | |
| Defendant – Appellant. | * | |

_____

Submitted: June 17, 2010
Filed: August 13, 2010

_____

Before MURPHY, BEAM, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Wyatt J. Ellison was convicted of aiding and abetting the robbery of three federally insured banks, in violation of 18 U.S.C. § 2113(a) and (d), and of brandishing a firearm during each robbery, in violation of 18 U.S.C. § 924(c). He was sentenced to 792 months imprisonment. On appeal he contends that the district court[1] erred by overruling his objection under Batson v. Kentucky, 476 U.S. 79 (1986), and by admitting gang evidence. We affirm.

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

Ellison was indicted for robbing three banks near Kansas City with Charles Williams and Luis Rodriguez. They were charged with taking $40,255 from Commerce Bank on November 14, 2007, $46,854.89 from First National Bank on January 12, 2008, and $4,573 from U.S. Bank on March 31, 2006. Witnesses reported seeing the gunman in the robberies wearing a green bandana over his face and green and white South Pole tennis shoes.

Ellison was charged with three counts of bank robbery, three counts of carrying or brandishing a firearm during each robbery, and one count of witness intimidation. He pled not guilty while Williams and Rodriguez entered into plea agreements. At Ellison's trial Rodriguez testified for the government, telling about an uncharged bank robbery by Ellison and Williams at North American Savings Bank (NASB) on September 15, 2007.

Before trial the court denied Ellison's motion in limine to exclude evidence of his affiliation with the West Side Hustlers, also known as the West Covina Hustlers, a gang known for wearing green clothing. During voir dire the government struck the four African American jurors on a 43 member panel, two for cause and two by peremptory strikes. Ellison challenged the peremptory exclusion of Juror 7, but the district court found the government's justification race neutral.

Evidence was admitted at trial to show that Ellison was the gunman in each robbery while Williams and Rodriguez drove the getaway vehicles or made diversionary 911 calls. During each robbery Ellison wore a dark jacket or hooded sweatshirt like one recovered by the police which contained DNA potentially linked to him. He was seen displaying a handgun during each robbery. Witnesses at First National Bank described a dark revolver, while the gunman seen at the other two banks carried a silver long barreled revolver. In a vehicle used by the robbers to flee, police found a loaded silver Smith and Wesson .357 revolver containing DNA that was a 1 in 40 quadrillion match to Ellison's.

The jury found Ellison guilty of the three bank robberies and the three related firearm offenses, but it exonerated him on the witness intimidation charge. The district court ordered restitution and sentenced Ellison to three concurrent 87 month prison sentences for the robberies, at the bottom of his guideline range. For the firearm offenses it imposed mandatory minimum sentences as required by Congress under § 924(c)(1), the Armed Career Criminal Act. Under that statute the first firearm offense required at least a 7 year term, § 924(c)(1)(A)(ii), and the second and third each carried a 25 year minimum, § 924(c)(1)(C). Since § 924(c)(1)(D)(ii) required the firearm sentences to run consecutively to one another and to the robbery sentences, Ellison's total sentence was 792 months.[2]

The first issue Ellison raises on appeal is the district court's denial of his Batson objection to the government's peremptory strike of Juror 7. The Equal Protection clause of the Fourteenth Amendment prohibits the use of peremptory challenges to strike jurors solely on the basis of race. Doss v. Frontenac, 14 F.3d 1313, 1316 (8th Cir. 1994) (citing Batson, 476 U.S. at 79, and Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991)). If a party makes a prima facie showing that a peremptory challenge is race based, the proponent must show a race neutral justification to overcome the objection. Id. The district court then decides whether the objecting party has shown purposeful discrimination. Id. Since those factual findings turn largely on credibility evaluations, they are due great deference, Batson, 476 U.S. at

---

[2]Ellison filed a pro se motion requesting that we take notice of the Sixth Circuit's decision in United States v. Almany, 598 F.3d 238 (6th Cir. 2010), interpreting § 924(c) differently than we have, see, e.g., United States v. Alaniz, 235 F.3d 386, 389 (8th Cir. 2000). The Supreme Court may soon address this circuit split. See Abbott v. United States, 574 F.3d 203 (3d Cir. 2009), cert. granted, 78 U.S.L.W. 3437 (U.S. Jan. 10, 2010) (No. 09-7073); Gould v. United States, 329 F. App'x 569 (5th Cir. 2009), cert. granted, 78 U.S.L.W. 3437 (U.S. Jan. 10, 2010) (No. 09-7073). Almany would be of little help to Ellison in any event since his robbery convictions carry no mandatory minimum sentences. See 598 F.3d at 241.

98 n.21, and our review is for clear error, United States v. Moore, 895 F.2d 484, 485 (8th Cir. 1990).

The government responded to Ellison's challenge by explaining that the complexity of the case required attentive jurors and that Juror 7 seemed disinterested because she had rolled her eyes and sighed during voir dire examination. Ellison disputed that reason, stating that the juror had shown she was paying attention by coherently answering the six or seven questions she had been asked. The government repeated its concern "about her demeanor, the sighs and the physical reaction of the juror and the response to the questions." The district court then found the government's stated reason to be race neutral. It also referred to a note of its own that the juror "didn't think that she could be a fair and impartial juror." Although the parties did not notice it at the time, on appeal they agree that the court had apparently misunderstood Juror 7's comment that she did not think her ability to be fair and impartial would be affected by the fact that members of her family had been crime victims.

Ellison asserts that the government's proffered reason that Juror 7 seemed inattentive was too subjective to survive a Batson challenge. We have previously observed that while a prosecutor's subjective judgment about attentiveness may be "particularly susceptible to the kinds of abuse prohibited by Batson," the potential for abuse can be mitigated by specific observations corroborating the government's justification for exercising a peremptory challenge. See United States v. Sherrills, 929 F.2d 393, 395 (8th Cir. 1991); see also Reynolds v. Benefield, 931 F.2d 506, 513 (8th Cir. 1991); United States v. Maxwell, 473 F.3d 868, 872 (8th Cir. 2007). The court's own observations may have added importance, but "the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge." Snyder v. Louisiana, 552 U.S. 472, 477 (2008).

We conclude that the district court did not clearly err in finding the government's reason for striking Juror 7 to have been race neutral. The government

explained that it believed Juror 7 might be an inattentive juror because she had rolled her eyes and sighed during examination.  See Maxwell, 473 F.3d at 872.  Although the district court did not clarify whether it had also observed that behavior, it had ample opportunity to consider the prosecutor's demeanor and credited the government's observations by finding its justification race neutral.  See Snyder, 552 U.S. at 477.

Ellison also contends that evidence about his alleged affiliation with the West Side Hustlers should have been excluded because it was irrelevant and unduly prejudicial.  The district court denied his motion in limine to exclude all gang related evidence but prohibited any evidence about the gang's criminal conduct.  We review the denial of Ellison's motion in limine for an abuse of discretion.  United States v. Noe, 411 F.3d 878, 887 (8th Cir. 2005).

Ellison argues that the gang related evidence should have been excluded because it was irrelevant.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Here, the bank robbery gunman's identity was at issue.  Ellison denied involvement in the robberies and asserted alibis.  The government introduced testimony and photographs showing that the Commerce Bank gunman wore a green bandana over his face.  It produced Fed. R. Evid. 404(b) evidence showing that the gunman in the uncharged NASB robbery had also worn a green bandana over his face.  Rodriguez testified that Ellison was wearing white and green South Pole tennis shoes during the U.S. Bank robbery, which was corroborated by a bank teller's testimony and a matching shoe print recovered from the bank.

The government offered evidence to show that Ellison was likely to wear green.  Two witnesses testified that they had often seen him wearing a green bandana and other green clothing.  One witness said she had seen Ellison's girlfriend purchase a green bandana for him, and three others said they had seen him wearing green and

white shoes like those seen on the gunman at the U.S. Bank robbery. Detective Ken Plunkett of the West Covina Police Department testified that the West Side Hustlers are a gang based in West Covina, California whose members identify themselves by the color green and who often wear green bandanas. He also testified that he knew from his personal experience investigating the gang that Ellison was a member. Other witnesses testified that they had heard Ellison claim to be a Hustler and had heard him exclaim more than once, "West Side Hustlers" or "West Side" while making gang signs.

Ellison showed the jury on direct examination that he had "West Covina" tattooed on his arm and "Hustler" on his neck, but he denied on cross examination that he was a member of the Hustlers, that he wore green clothing or bandanas, and that he even knew the gang wore green bandanas. The government impeached that testimony by offering a group photograph of some Hustlers which showed Ellison wearing a green shirt and green gloves while standing among others dressed in green, some with green bandanas.

In this case the gang related evidence was relevant to establish Ellison's identity as the gunman in the robberies. It tended to show that he had a reason to wear green clothing and that witnesses had seen him in it. The gang evidence also impeached his own testimony. Ellison contends that it should nonetheless have been excluded as unfairly prejudicial. Relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Gang related evidence is inadmissible if its purpose is solely "to prejudice the defendant or prove his guilt by association with unsavory characters." United States v. McKay, 431 F.3d 1085, 1093 (8th Cir. 2005); see also United States v. Roark, 924 F.2d 1426, 1434 (8th Cir. 1991). Evidence relevant to a disputed issue is not inadmissible merely because it relates to a gang or gang activity, however. McKay, 431 F.3d at 1093.

This case is unlike United States v. Street, 548 F.3d 618 (8th Cir. 2008), for example, where we reversed because the defendant was prejudiced by the introduction

of extraneous gang evidence, id. at 633. Here, the evidence was relevant to the charges Ellison faced. Detective Plunkett testified briefly that the West Side Hustlers are a gang whose members wear green clothing, especially green bandanas, and that Ellison was a member. The photograph of Ellison and other alleged Hustlers dressed in green and the witness testimony about hearing him claim to be a Hustler and exclaim its name while making gang signs were offered to impeach his own testimony. No evidence was adduced about any criminal activities of the Hustlers or of gangs in general.

Our concern under Fed. R. Evid. 403 is that the relevance of gang related evidence not be overwhelmed by the risk that the jury will rest a guilty verdict solely on a defendant's gang affiliation. The district court allayed that concern by limiting the scope of the evidence to the issues of identity and impeachment. Cf. United States v. Easter, 66 F.3d 1018, 1020–21 (9th Cir. 1995) (affirming admission of gang related evidence where relevant to identity and not unduly prejudicial); United States v. Sparks, 949 F.2d 1023, 1026 (8th Cir. 1991) (relevant for impeachment purposes). The overall strength of the prosecution's evidence here was strong enough to overcome any risk of unfair prejudice from the introduction of limited gang evidence. We conclude that the district court did not abuse its discretion in admitting the challenged evidence.

Accordingly, the judgment of the district court is affirmed.

_____