# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2243

_____

United States of America

*Plaintiff - Appellee*

v.

Albert Terrell Ellis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: December 18, 2015
Filed: March 18, 2016

_____

Before WOLLMAN, BRIGHT, and LOKEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Albert Terrell Ellis was convicted by a jury of possessing a firearm as a felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(e); possessing heroin with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(C); and carrying a firearm during and in relation to a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A). He argues on appeal that the government's evidence was insufficient to support the jury's guilty verdicts and that

the district court[1] abused its discretion by admitting evidence of his prior felony drug-trafficking conviction. We affirm.

Ellis first argues that the government's evidence against him was insufficient to support his convictions. We review the sufficiency of the evidence to support a conviction *de novo*, considering the evidence in the light most favorable to the government and accepting all reasonable inferences that may be drawn therefrom in favor of the verdict. United States v. Maloney, 466 F.3d 663, 666 (8th Cir. 2006). Our review of the evidence presented at trial is "highly deferential." United States v. Kirk, 528 F.3d 1102, 1111 (8th Cir. 2008). "If evidence consistent with guilt exists, we will not reverse simply because the facts and circumstances may also be consistent with some innocent explanation." United States v. Griffith, 786 F.3d 1098, 1102 (8th Cir. 2015) ("Even where the evidence 'rationally supports two conflicting hypotheses, [we] will not disturb the conviction.'" (citation omitted)). Moreover, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam). Thus, we will reverse a conviction only if no reasonable jury could have found the defendant guilty. See Maloney, 466 F.3d at 666.

In October 2012, Ellis drove his mother's GMC Envoy from his home in Chicago, Illinois, to Duluth, Minnesota, where he planned to stay for several days with his sometime girlfriend, Arajay Guinn, who had recently moved into a duplex apartment rented by Jacqueline Clancey. Clancey's boyfriend, Mathew Johnson, would also periodically stay at the apartment. Clancey knew Ellis only as "Medicine Man," because he supplied heroin to her, Guinn, and Johnson. According to Clancey, Ellis kept a "stack of cash" in the apartment, but he would "leave the apartment" to retrieve the heroin that he supplied to her "every day." Ellis told Clancey that he had a firearm "somewhere in the house." He did not tell her precisely where he kept it, however, and she never saw him with a firearm. At some point after Ellis's stay

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

began, Clancey was in the duplex's common basement area searching for heroin when she discovered a firearm wrapped in a brown plastic grocery bag in a closet. Because she was concerned and "didn't know why [the firearm] was there," she removed it from the closet and placed it in a small storage space beneath a wooden trapdoor in the basement floor.

On October 10, 2012, Clancey and Guinn engaged in a violent physical altercation at the apartment over heroin and money. Sometime during the altercation, Ellis, who was not present when the argument began, arrived at the apartment and separated the two women. Clancey then telephoned her mother, crying and claiming that she was frightened, that she felt unsafe, that "something bad [was] happening," and that her mother should telephone the Duluth police. Clancey's mother called 911 and asked the dispatcher to send an officer to Clancey's home to check on her welfare. Clancey told Ellis and Guinn that the police were on the way, and she demanded that Guinn move out of the apartment immediately. Ellis warned Clancey not to "tell anybody or else he's coming back," whereupon he and Guinn began to remove Guinn's belongings from the residence.

Duluth Police Officer Daniel Rendulich responded to the 911 call, arriving at the apartment to find Ellis in the front yard, loading Guinn's belongings into a Ford Expedition that Ellis had borrowed from a friend. Ellis told Rendulich that Clancey and Guinn had been fighting and that he was helping Guinn move out of the apartment. When Duluth Police Officer Matt McShane arrived, the officers went inside the apartment to speak with Clancey. McShane soon saw Guinn outside the apartment, and, having heard that she "had drugs on her person," went outside and asked to look inside her bag, in which he found evidence of heroin use, including syringes and a spoon coated with burned residue.

In the meantime, Rendulich was inside the apartment speaking with Clancey, who "appeared nervous and upset," "leaned in close" to speak with him, and "look[ed] constantly over [his] shoulder at the door . . . as if she was concerned about

-3-

somebody coming in or interrupting what she was saying." Clancey told Rendulich that she had discovered a firearm in her basement that she believed belonged to Ellis, and she offered to show Rendulich where she had hidden it. Clancey led Rendulich to the wooden trapdoor in the basement floor, but the firearm was no longer there. Rendulich, concerned that there was a firearm on the scene that had not been accounted for, advised McShane by radio to conduct a pat down of Ellis to ensure that he was not armed. The pat down revealed that Ellis was not armed but was carrying a "quantity of cash" in his pocket that was "bundled into a few separate packages or packets," which, according to McShane, was typical "of individuals who sell controlled substances." McShane returned the cash to Ellis, and Ellis and Guinn drove away in the Expedition a short time later.

Meanwhile, after Clancey and Rendulich failed to find the firearm where Clancey had hidden it beneath the trapdoor, Clancey led Rendulich to the basement closet where she had originally discovered the firearm. Inside the closet was a plastic grocery bag that held two boxes of ammunition, but no firearm. Clancey then told the officers that Ellis had retrieved the heroin he supplied her and the others from his vehicle, and that she suspected that the firearm, as well as Ellis's drug stash, would be in that vehicle. She then pointed the officers to Ellis's Envoy, which was parked on the street in front of the duplex, resting on a jack and missing a rear tire. A day or two earlier, Ellis had asked Johnson to fix a flat tire on the Envoy, but Johnson had been unable to remove the spare tire from its rack under the vehicle, leading Ellis to use the Expedition to take the flat tire to a repair shop on the morning of October 10, from where he planned to pick up the repaired tire later that afternoon. After Clancey identified Ellis's Envoy, Rendulich ran its license plates and determined that the vehicle was registered to Ellis's mother in Illinois. He then called for a police canine unit to conduct a drug sniff of the vehicle, and McShane contacted Investigator Scott Williams to obtain a warrant to search the vehicle. Two canine units eventually arrived, and both dogs alerted to the vehicle.

-4-

After Williams arrived with a warrant, the officers searched the Envoy and recovered from its gas-cap compartment a clear plastic bag, which held several separate, smaller-quantity packets of crack cocaine and heroin. Subsequent analysis confirmed that the bag contained a total of .08 grams of heroin and 1.6 grams of crack cocaine. The officers recovered from under the vehicle's hood a loaded .45-caliber handgun wrapped in a brown plastic grocery bag, which Clancey testified resembled the firearm and grocery bag she had discovered in her basement. After the officers found the drugs and the firearm, McShane reentered the apartment and, learning that Clancey had left and Johnson had arrived, obtained permission from Johnson to retrieve the ammunition from the basement closet.

The handgun and the ammunition, as well as the plastic grocery bags in which they were found, were submitted for fingerprint and DNA analysis. Although Ellis's fingerprint was found on the ammunition evidence, neither his fingerprints nor his DNA was found on the firearm or the plastic bag in which it was found.

In addition to the foregoing evidence, the jury heard testimony from several government experts. The government's expert in drug trafficking and drug organizations explained, among other things, that firearms are an essential tool used by drug traffickers to protect themselves, their drugs, and their drug proceeds. The government's fingerprint expert explained that if the surface of a firearm is "dirty or textured," or if an individual has very dry hands or is wearing gloves while handling the firearm, it may not be possible to recover fingerprint evidence from the firearm. The government's DNA expert explained that if a firearm had been "cleaned or wiped down," there may be no DNA evidence present. The expert also stated that firearms are often coated in "oils and grease," which "inhibit DNA from showing up," and that firearms "get hot when they're shot," which "breaks down DNA."

At the close of the government's case, the district court ruled on the government's motion to introduce evidence of Ellis's 1996 state felony conviction for heroin delivery, stating:

I think the heroin, particularly since it is possession with intent and this case involves heroin and a defense it does not belong to the defendant but another heroin user—there's multiple heroin users who are in question and whose credibility is challenged before the Court—it may assist the jury in determining who the heroin belonged to and recovery from the vehicle in light of the defense. So I will allow inquiry into the 1996 Cook County possession of a controlled substance with intent to deliver, which is an exact same possession of the exact same drug in this case. So I will allow its admissibility under 404(b).

Following the denial of his motion for judgment of acquittal, Ellis testified in his own defense, during which his counsel raised the subject of the 1996 conviction. On cross-examination, the government elicited follow-up testimony from Ellis to clarify the year of the conviction and to confirm that it involved the delivery of heroin. Ellis also testified about his time at Clancey's apartment and the events on October 10, generally denying all knowledge of the drugs and firearm and suggesting instead that either Clancey or Johnson had placed the contraband in his vehicle. As recounted earlier, the jury found Ellis guilty of possessing a firearm as a felon, of possessing heroin with intent to distribute, and of carrying a firearm during and in relation to a drug-trafficking crime. It found him not guilty on the possession-of-ammunition charge. The district court sentenced Ellis to 262 months' imprisonment.

Ellis first argues that the evidence was insufficient to convict him of possessing a firearm as a felon. To find Ellis guilty of this offense, the government was required to prove that Ellis was a felon, that he knowingly possessed a firearm, and that the firearm had traveled in or affected interstate commerce. See 18 U.S.C. § 922(g); Maloney, 466 F.3d at 666. Ellis challenges the sufficiency of the government's evidence on the second element—that he knowingly possessed the firearm recovered from his vehicle. "Possession" for these purposes may be either actual or constructive. Maloney, 466 F.3d at 666. A defendant may be in constructive possession of a firearm if he has "dominion and control" over the firearm itself or over the premises in which the firearm was located. Id. at 666-67. "Proof of constructive possession is sufficient to prove the element of knowing

possession . . . ." United States v. Johnson, 285 F.3d 744, 750 (8th Cir. 2002). More specifically, we have held that a defendant's dominion and control over a vehicle may indicate knowledge of the vehicle's contents. See United States v. Parker, 587 F.3d 871, 881 (8th Cir. 2009).

Ellis does not dispute that the vehicle from which the firearm was recovered belonged to him. He argues, however, that there was insufficient evidence to prove that he had dominion and control over the vehicle because he had given the vehicle's keys to Johnson when he asked Johnson to change the flat tire. Thus, argues Ellis, the evidence established that it was Johnson who had dominion and control over the vehicle and constructively possessed the firearm recovered therefrom. We disagree. Clancey testified that Ellis did not give her or Johnson the keys to the vehicle while they were attempting to change the tire. Although Johnson said nothing about the keys, he denied driving Ellis's vehicle, denied putting the heroin or the firearm inside Ellis's vehicle, and testified that he "never went in the vehicle or anything like that." Johnson also testified that although he had used "20 gauges and 12 gauges for clay pigeon[s]," he had "never held a handgun or owned one in [his] life." Clancey confirmed that she had never seen Johnson with a handgun. Accordingly, there was sufficient evidence for a reasonable jury to conclude that it was Ellis and not Johnson, who had dominion and control over the vehicle.

The crux of Ellis's argument is that the jury made an erroneous credibility determination by rejecting his testimony in favor of Clancey's and Johnson's. But weighing the evidence and assessing the credibility of witnesses are "exclusively for the jury." Kirk, 528 F.3d at 1111. The jury heard the conflicting testimony, it assessed the demeanor and credibility of the witnesses, and it elected to credit Clancey and Johnson, despite Ellis's vigorous challenges to their credibility. Any doubts about their credibility, "[w]hether well-founded or not," were for the jury—not the court—to resolve. United States v. Kelly, 625 F.3d 516, 519 (8th Cir. 2010). Likewise, it was the jury's responsibility to decide what conclusions should be drawn from the evidence. Cavazos, 132 S. Ct. at 4; see also United States v. Anderson, 78

F.3d 420, 422 (8th Cir. 1996) ("The evidence need not exclude every reasonable hypothesis of innocence, and we may not disturb the conviction if the evidence rationally supports two conflicting hypotheses.").

Ellis also points to the fact that neither his DNA nor his fingerprints were recovered from the firearm. But the government's experts explained why DNA and fingerprint evidence may be difficult to recover from a firearm, and the jury was entitled to consider these explanations in reaching its conclusion that Ellis possessed the firearm despite the absence of DNA and fingerprint evidence.

Applying our highly deferential standard of review, we conclude that the evidence, viewed in the light most favorable to the verdict, was sufficient for a reasonable jury to conclude that Ellis maintained dominion and control over his vehicle and thus knowingly possessed the firearm recovered therefrom.

Ellis next argues that the evidence was insufficient to convict him of possessing heroin with intent to distribute. To convict Ellis of this offense, the government was required to prove that Ellis knowingly possessed the heroin recovered from his vehicle and that he intended to distribute it. See United States v. Timlick, 481 F.3d 1080, 1082 (8th Cir. 2007). As with possession of a firearm, constructive possession of illegal drugs is sufficient to satisfy the element of knowing possession, and such possession is established if a defendant has dominion and control over the illegal drugs themselves or over the premises in which those drugs are located. See id. at 1083. Having already concluded that the evidence was sufficient to establish that Ellis exercised dominion and control over the vehicle and thus had constructive possession of the firearm recovered from the vehicle, we likewise conclude that the evidence was sufficient to establish that Ellis constructively possessed the heroin recovered from the vehicle.

With respect to Ellis's intent to distribute that heroin, Clancey testified that she knew Ellis as "Medicine Man" and that he had supplied her, Guinn, and Johnson with

heroin.  The officers found heroin paraphernalia in Guinn's purse on the day in question.  The heroin recovered from Ellis's vehicle was packaged in several smaller quantities, which government witnesses testified was a common practice among drug dealers.  Clancey also testified that Ellis kept a "stack of cash" in the apartment, and McShane testified that Ellis had a "quantity of cash" in his pocket "bundled into a few separate packages or packets," which, in his experience, was typical "of individuals who sell controlled substances."  Ellis denied possessing the heroin with intent to distribute and again claimed that either Clancey or Johnson was responsible for placing the contraband in his vehicle.  He also disputed the suggestion that the manner in which he carried cash in his pocket implied drug trafficking.  But the jury reasonably rejected Ellis's testimony in favor of the government's theory.  "[T]he presence of one possible 'innocent' explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt."  Maloney, 466 F.3d at 667.  Again keeping in mind our highly deferential standard of review, we conclude that the evidence was sufficient for the jury to find that Ellis possessed the heroin recovered from his vehicle with intent to distribute.  Accordingly, we affirm Ellis's possession-with-intent conviction.

Ellis was charged under § 924(c)(1)(A) with using and carrying a firearm during and in relation to the underlying heroin-distribution offense.  This offense encompasses two alternative types of conduct with a firearm, "using" or "carrying," "either one of which provides a basis for prosecution under the statute."  United States v. White, 81 F.3d 80, 83 (8th Cir. 1996).  As noted earlier, the jury found Ellis guilty on the carrying charge.  We have already concluded that Ellis knowingly possessed a firearm for purposes of the felon-in-possession charge under § 922(g)(1), but "carrying" a firearm for purposes of a § 924(c)(1)(A) charge requires something more than simple "possession."  See Muscarello v. United States, 524 U.S. 125, 126, 136 (1998); see also Bailey v. United States, 516 U.S. 137, 143-44 (1995).  A defendant carries a firearm under § 924(c)(1)(A) when he bears it on his person.  See Muscarello, 524 U.S. at 130 ("No one doubts that one who bears arms on his person

'carries a weapon.' But to say that is not to deny that one may *also* "carry a weapon" . . . in a car."). A defendant also carries a firearm under § 924(c)(1)(A) when he "knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car, which [he] accompanies." Muscarello, 524 U.S. at 127; see also United States v. Gill, 513 F.3d 836, 851 (8th Cir. 2008) (noting that "an individual can carry a firearm merely by knowingly transporting it in a vehicle"). A defendant carries a firearm "during and in relation to" an underlying drug-trafficking offense when the firearm "facilitated or had the potential to facilitate" the drug-trafficking offense. United States v. Winn, 628 F.3d 432, 439 (8th Cir. 2010) (citing Smith v. United States, 508 U.S. 223, 238 (1993)).

The government argues that Ellis carried the firearm in his vehicle. We need not determine whether the government must prove that Ellis actually drove the vehicle while the firearm was located within it, because the evidence was sufficient for a jury to conclude that Ellis had carried the firearm on his person. Specifically, there was sufficient evidence for a reasonable jury to find that Ellis "carried" the firearm for purposes of § 924(c)(1)(A) by retrieving it from the basement of the duplex, transporting it to his vehicle, and concealing it in his vehicle near his heroin stash. Clancey testified that Ellis told her that he had a firearm and that she later discovered a firearm in her basement. She further testified that on the morning in question, she told Ellis that the police were on the way to the apartment, giving Ellis ample time to remove the firearm from the basement and conceal it in his vehicle. When police arrived at the duplex, the firearm was no longer in the basement but was eventually recovered from Ellis's vehicle. Both Clancey and Johnson denied placing the firearm in Ellis's vehicle. The jury could reasonably infer from this evidence that Ellis, knowing police were on the way to the apartment, retrieved the firearm he had hidden in the basement and concealed it in his vehicle, along with his heroin stash, in an effort to protect this contraband from discovery by police.

Moreover, the evidence was sufficient for the jury to conclude that Ellis carried the firearm from the apartment to his vehicle "during and in relation" to his heroin-

distribution activity. The government presented evidence that firearms are essential tools used by drug traffickers to protect themselves, their drugs, and their drug proceeds, and "[w]e have long recognized the role of firearms in protecting drugs or drug proceeds." United States v. Espinosa, 300 F.3d 981, 984 (8th Cir. 2002). Clancy testified that Ellis would leave the apartment to retrieve heroin from his vehicle. The evidence was sufficient for the jury to infer that Ellis carried the firearm from the basement to his vehicle to conceal it near his heroin stash with the purpose of facilitating his heroin-distribution activity.

"If evidence consistent with guilt exists, we will not reverse simply because the facts and circumstances may also be consistent with some innocent explanation." Griffith, 786 F.3d at 1102 ("Even where the evidence 'rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction.'" (citation omitted)). We must consider the evidence in the light most favorable to the jury's verdict and accept all reasonable inferences that may be drawn therefrom in favor of the verdict. Given this highly deferential standard of review, we cannot say that the evidence was insufficient to support Ellis's conviction for carrying a firearm during and in relation to a drug-trafficking crime, and thus we affirm the conviction.

Finally, Ellis argues that the district court abused its discretion by admitting evidence of his 1996 state felony conviction for possessing heroin with intent to deliver. We review for abuse of discretion a district court's decision to admit evidence of a prior conviction under Federal Rule of Evidence 404(b). See United States v. Cowling, 648 F.3d 690, 699 (8th Cir. 2011). Such evidence is not admissible under Rule 404(b) "solely to prove the defendant's propensity to commit criminal acts," id. (citation omitted), but is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b). Evidence of a prior conviction is admissible if (1) it is relevant to a material issue, (2) it is similar in kind and not overly remote in time to the charged offense, (3) it is supported by sufficient evidence, and (4) its potential

prejudice does not substantially outweigh its probative value. Cowling, 648 F.3d at 699.

Ellis denied possessing or distributing heroin and denied any knowledge of the heroin recovered from his vehicle, which placed his state of mind at issue and rendered his prior heroin-delivery conviction probative of his knowledge and intent to commit the charged heroin-distribution offense. See United States v. Thomas, 58 F.3d 1318, 1321 (8th Cir. 1995) (stating that Rule 404(b) evidence is admissible when a defendant places his state of mind at issue by means of a general-denial defense); United States v. Gipson, 446 F.3d 828, 831 (8th Cir. 2006) ("Evidence of prior possession of drugs, even in an amount consistent only with personal use, is admissible to show such things as knowledge and intent of a defendant charged with a crime in which intent to distribute drugs is an element." (quotation and alteration omitted)). Moreover, Ellis's prior conviction was for delivering heroin—the very drug he was charged with distributing in this case, which made the prior conviction particularly relevant to knowledge, intent, and absence of mistake. Furthermore, any prejudicial effect of admitting the prior-conviction evidence was mitigated by the district court's limiting instruction to the jury that it could consider the evidence of Ellis's prior conviction only to evaluate his credibility and to determine "knowledge, motive, absence of mistake, accident or intent." See United States v. Ironi, 525 F.3d 683, 688 (8th Cir. 2008) (noting that prejudicial effect of prior-crimes evidence was reduced when the district court instructed jury to consider prior-crimes evidence only to determine intent). We thus reject Ellis's argument that the evidence was admitted for an improper purpose and was more prejudicial than probative.

Ellis also argues that his prior conviction was too remote in time to be admissible under Rule 404(b), noting that his 1996 conviction was nineteen years old at the time of the instant offense. Although proximity in time is a factor a court must consider in deciding whether to admit Rule 404(b) evidence, we have held that "there is no fixed period within which the prior acts must have occurred." United States v. Baker, 82 F.3d 273, 276 (8th Cir.1996). Instead, we "appl[y] a standard of

-12-

reasonableness, as opposed to a standard comprising an absolute number of years, in determining whether a prior offense occurred within a relevant time frame for purposes of Rule 404(b)." United States v. Green, 151 F.3d 1111, 1113 (8th Cir. 1998). We have applied this standard of reasonableness in cases in which the prior convictions were similarly remote in time to the prior conviction in this case. See United States v. Williams, 308 F.3d 833, 836-37 (8th Cir. 2002) (twenty years); United States v. Walker, 470 F.3d 1271,1275 (8th Cir. 2006) (eighteen years); United States v. McCarthy, 97 F.3d 1562, 1573 (8th Cir. 1996), (seventeen years); United States v. Warren, 788 F.3d 805, 812 (8th Cir. 2015) (fifteen years). A factor relevant in those cases is also present in this case, namely, that Ellis was incarcerated for much of the time between his 1996 offense and the offense charged here. See, e.g., Warren, 788 F.3d at 812 (noting that the admission of "remote convictions [has] been upheld when a defendant has been in custody for much of the intervening time period").

Because the prior-crimes evidence was relevant, probative, and not too remote in time to the instant offense, and because any potentially unfair prejudicial impact was mitigated by the district court's limiting instruction, the district court did not abuse its discretion under Rule 404(b) by admitting the evidence of Ellis's 1996 state felony conviction.

The judgment is affirmed.

BRIGHT, Circuit Judge, concurring in part and dissenting in part.

This is a close case marked by the lack of direct evidence of appellant-defendant Albert Ellis's (Ellis) guilt. Instead, the government relies, primarily, on circumstantial evidence to sustain Ellis's convictions. Based upon the evidence submitted at trial, while on somewhat different grounds, I concur in the majority's conclusion that the circumstantial evidence is sufficient to sustain Ellis's convictions for possessing a firearm as a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(e), and possessing heroin with intent to distribute, in violation of 21 U.S.C.

§§ 841(a)(1), (b)(1)(C). I further agree with the majority that the district court did not abuse its discretion by admitting evidence of Ellis's prior felony drug-trafficking conviction. I dissent, however, from the majority's holding that sufficient evidence supported Ellis's conviction for "carr[ying]" a firearm "during and in relation to" a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A).

"We review the denial of a motion for acquittal by viewing the evidence in the light most favorable to the verdict, giving the government the benefit of all reasonable inferences to be drawn from the evidence." United States v. Davis, 103 F.3d 660, 667 (8th Cir. 1996) (emphasis added). We will uphold the conviction unless "a reasonable factfinder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements." Id. (quoting United States v. French, 88 F.3d 686, 687-88 (8th Cir. 1996)). This " 'standard applies even where the conviction rests entirely on circumstantial evidence.' " United States v. Wilcox, 50 F.3d 600, 602-03 (8th Cir. 1995) (quoting Durns v. United States, 562 F.2d 542, 546 (8th Cir. 1977)). "[W]here the government's evidence is equally strong to infer innocence of the crime charged as it is to infer guilt, the verdict must be one of not guilty and the court has a duty to direct an acquittal." United States v. Kelton, 446 F.2d 669, 671 (8th Cir. 1971) (emphasis added).

Under the statute, to sustain Ellis's conviction, the government must prove Ellis "carrie[d]" a firearm "during and in relation to . . . [a] drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). The Supreme Court held that the word "carr[y]" in section 924(c)(1) means the government must prove the firearm was either on the defendant or accompanying the defendant. Muscarello v. United States, 524 U.S. 125, 130-31, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998). Thus, to "carry" a firearm requires some "conveyance" of the firearm, whether by bearing the firearm or "carrying . . . [the] firearm in a vehicle." Id. at 128-30, 139.

The Supreme Court further defined the phrase "in relation to" under section 924(c)(1) to mean "the firearm must have some purpose or effect with respect

to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." Smith v. United States, 508 U.S. 223, 237-38, 113 S. Ct. 2050, 124 L. Ed. 2d 138 (1993). The words "during and in relation to" are the "limiting phrase" in section 924(c)(1) that "should prevent misuse of the statute to penalize those whose conduct does not create the risks of harm at which the statute aims,"—namely convincing an individual to " 'leave his [or her] gun at home' " when " 'tempted to commit a Federal felony.' " Muscarello, 524 U.S. at 132, 139, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (quoting 114 Cong. Rec. 22231 (1968) (statement of Rep. Poff)).

Beginning with the "carrying" prong of section 924(c)(1), the record shows no evidence, direct or circumstantial, that Ellis carried the firearm from the basement of the duplex to the vehicle. Instead, the evidence presented at trial included: (1) Jacqueline Clancey's (Clancey) testimony that, (a) Ellis told Clancey he had a firearm, (b) Clancey never saw Ellis with a firearm, (c) Clancey found a firearm in the basement of the duplex, (d) Clancey believed the firearm belonged to Ellis, (e) Clancey moved the firearm to a secret location—unknown to Ellis, and (f) Clancey did not move the firearm in Ellis's inoperable vehicle; and (2) Mathew Johnson's testimony that he did not place the firearm in Ellis's inoperable vehicle. None of this evidence proves Ellis "carried" the firearm.

The majority improperly permits the jury to speculate from the absence of evidence regarding the removal of the firearm from the basement—when the government bears the burden to prove the elements of the crime. See United States v. Simms, 18 F.3d 588, 593 (8th Cir. 1994) ("The burden to make out the guilt of the defendant . . . is upon the government"); see also Stanback v. United States, 113 F.3d 651, 657 (7th Cir. 1997) ("Absent any evidence in that vein, only speculation will permit us to construe the mere presence of the gun on the table as the kind of 'active employment' that Bailey requires as a precondition to conviction for 'use' of the firearm."); United States v. Valerio, 48 F.3d 58, 64 (1st Cir. 1995) ("[A]lthough the government need not exclude every reasonable hypothesis of innocence in order to

sustain the conviction, <u>we are loath to stack inference upon inference in order to uphold the jury's verdict</u>" (emphasis added) (citation omitted)).

Even assuming Ellis carried the firearm from the basement to the vehicle, there is no evidence, direct or circumstantial, showing Ellis carried the firearm "during and in relation to" Ellis's drug trafficking activities. We have consistently held, in keeping with Supreme Court precedent, that " 'simultaneous possession of drugs and . . . firearm[s] is not alone sufficient to support a conviction under' section 924(c)." <u>United States v. Spencer</u>, 439 F.3d 905, 914 (8th Cir. 2006) (alteration in original) (quoting <u>United States v. Hamilton</u>, 332 F.3d 1144, 1150 (8th Cir. 2003)). Instead, some "[e]vidence of a nexus between the defendant's [carrying] of the firearm and the drug offense is required." <u>Id.</u> And "temporal proximity between the carrying of a firearm and drug trafficking activity is important." <u>United States v. Bailey</u>, 235 F.3d 1069, 1073 (8th Cir. 2000).

Here, the majority posits a jury could infer "that Ellis, knowing police were on the way to the apartment, retrieved the firearm . . . and concealed it in his vehicle, along with his heroin stash, <u>in an effort to protect this contraband from discovery by police</u>." (Maj. Op. 10 (emphasis added)). The majority concludes that from this inference the jury could <u>again infer</u> that "Ellis carried the firearm . . . with the purpose of facilitating his heroin-distribution activity." (<u>Id.</u>) While one could speculate that the drugs and the firearm were connected because they were both located in the vehicle, "speculation is different from a reasonable legal inference based on specific evidence." <u>United States v. Turner</u>, 511 F. App'x 840, 844 (11th Cir. 2013) (Barkett, J., dissenting) (per curiam) (unpublished). There exists not a single piece of evidence showing Ellis carried a firearm during a drug transaction, or any other drug trafficking activity. <u>See</u> <u>id.</u> at 845 ("Here there is no evidence . . . Turner's co-conspirators possessed firearms during any acts that were part of the charged drug conspiracy, or that they possessed firearms to be used in furtherance of the conspiracy, or that Turner could have reasonably foreseen that his co-conspirators would possess firearms in furtherance of the conspiracy."); <u>United States v. Nichols</u>,

184 F. App'x 532, 537-39 (6th Cir. 2006) (Chon, J., concurring in part, dissenting in part) (unpublished) (concluding insufficient evidence supported a section 924(c) conviction when the only evidence tying the firearm and drugs was their placement inside a vehicle); cf. United States v. Leary, 422 F. App'x 502, 513 (6th Cir. 2011) (unpublished) (holding the evidence did not permit an inference a firearm and drugs were connected, in part, because there was "no evidence that Leary possessed a gun" any time he was observed with drugs).

Thus, concluding a nexus existed between Ellis's alleged carrying of the firearm from the basement and Ellis's drug-trafficking activities requires stacking numerous inferences upon each other, almost all speculative. Spencer, 439 F.3d at 914 (holding some "[e]vidence of a nexus between the defendant's [carrying] of the firearm and the drug offense is required"). In my view, this tenuous link between the facts presented at trial and the conclusion Ellis carried the firearm during drug-trafficking activities falls on the side of speculation and it is impossible for a jury to find Ellis guilty beyond a reasonable doubt. See, e.g., United States v. Nance, 40 F. App'x 59, 65-66 (6th Cir. 2002) (unpublished) (concluding a potential to facilitate drug trafficking is not shown simply because a firearm and drugs were found inside a vehicle). To rule otherwise would undermine the "limiting" effect of the "during and in relation to" element of the crime, such that the government need not prove a nexus between the drug trafficking activities and the firearm. See Muscarello, 524 U.S. at 139, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (holding the "during and in relation to" language is the "limiting phrase" in section 924(c)(1) that "should prevent misuse of the statute to penalize those whose conduct does not create the risks of harm at which the statute aims").

For these reasons, I vigorously dissent. For this non-violent offense, Ellis has been sentenced quite harshly. Ellis's conviction under section 924(c)(1)(A) should be vacated on the merits and Ellis's sentence should, thereby, be reduced by 60 months.

_____