# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2409

_____

United States of America

*Plaintiff - Appellee*

v.

Colin J. Boone

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 15, 2016
Filed: July 8, 2016

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Colin J. Boone, a former Des Moines, Iowa, police officer, was convicted of willfully depriving Orville Hill of his Fourth Amendment right to be free from the use of unreasonable force by a law enforcement officer, in violation of 18 U.S.C. § 242.[1]

---

[1]Section 242 provides, in relevant part:

Boone appeals, arguing that the district court[2] abused its discretion in admitting evidence of a prior bad act and in admitting certain hearsay statements. We affirm.

## I. Background

In the early morning hours of February 19, 2013, Des Moines police officers Trudy Simonson and Lindsey Kenkel came upon the scene of a one-car accident. Hill had crashed his van and was lying unconscious between the van's bucket seats, with his head resting on the first row of back seats. The officers pounded on the windows of the van, but Hill did not respond. Simonson called for back-up, and Officers Cody Willis and Tanner Klinge soon arrived.

Hill regained consciousness and began acting erratically. As the officers shone their flashlights into the van, Hill "started jumping at our lights" and smacked the windows. After being ordered to unlock the van's door, Hill tried to drive away. His vehicle had been damaged in the accident, however, and traveled only a short distance before coming to a stop. Simonson then approached the driver's side of the van, while Willis approached the passenger's side. They simultaneously broke out the windows near the front of the van. Willis was able to unlock and open the passenger's side door. He reached inside and dragged Hill out, who fell face-down to the ground as Willis tackled him.

---

Whoever, under color of any law, . . . willfully subjects any person in any State . . . to the deprivation of any rights . . . secured or protected by the Constitution . . . and if bodily injury results from the acts committed in violation of this section[,] . . . shall be fined under this title or imprisoned not more than ten years, or both . . . .

[2]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

Willis held Hill's right arm as he placed his knee on the middle of Hill's back. To assist Willis, Kenkel pressed her knees onto Hill's right shoulder and secured his right forearm with her hands. Hill's left arm had been pinned underneath him, and he flailed his legs as Klinge pinned down Hill's back left side and tried to pull Hill's left arm behind his back. As Simonson came around the van, she saw the three officers on top of Hill. Although Hill was yelling and struggling, he was not kicking, biting, or hitting the officers. Willis believed that Hill would have been handcuffed in a matter of seconds.

Boone also responded to the report of an accident. As he drove to the scene, Boone heard that the vehicle had begun moving and that the officers had requested authorization to break out a window. Boone arrived as Hill was being tackled. According to Boone, he saw a person face-down on the ground, trying to push up with his left arm, with officers on his right side trying to secure Hill's right arm. Boone exited his patrol car and ran toward Hill, saying nothing to Hill or the officers as he ran. Boone testified that he then "used a side kick and tried to sweep that [left] arm out from underneath [Hill]." At the time, Boone weighed almost 400 pounds and was wearing boots.

According to the other officers, however, Boone ran toward Hill and kicked him directly in the face, causing Hill's head to jerk back in a "whiplash motion." The force of Boone's kick caused Kenkel to lose her balance. Hill, who went limp for a moment after the kick, lay face-down on the ground. He bled from his mouth and from cuts on his face. After Hill rolled from his stomach to his back, he gurgled from blood pooling in the back of his throat. The officers then rolled him onto his side "[s]o he wouldn't choke on his own blood." Hill spit out two teeth. Hill was transported by ambulance to the emergency room, where the treating physician determined that his injuries had been caused by considerable blunt trauma "consistent with a kick."

-3-

Willis and Klinge accompanied Hill in the ambulance. Before they left the scene, Boone opened the ambulance door and asked Willis "if [he] was good and if [he] needed anything." Willis angrily instructed Boone to complete an arrest incident report, a form officers use to document any use of force. To Willis, it was obvious that Boone "needed to document how Orville Hill was missing teeth," yet Boone seemed to be asking whether he needed to complete any paperwork at all. Boone also approached Simonson and Kenkel, telling them, "[I] meant to knock him out a little bit," or, "I just tried to knock him out." Before returning to the station, Boone told another officer that he had to complete an arrest incident report because he had kicked Hill in the head.

Boone's then-fiancee worked as a dispatcher at the police station. When Boone returned to the station, he told her "that he had put his boot laces across somebody's face." When he later explained the incident in greater detail, Boone told her that "he had taken a ten-foot running start" and that "after he had kicked the guy[,] . . . [Boone] saw [Hill] spitting teeth out and that blood gushed everywhere."

Boone's arrest incident report stated that "[t]he suspect was trying to push up and I kicked the suspect in the area of the left shoulder." Boone did not report that he had kicked Hill in the face, nor did he state that he had caused Hill's injuries, which included two missing teeth, a damaged third tooth, a broken nose, swollen lips, and a laceration above the eye that required six sutures.[3] After Willis learned that Boone's report was incomplete and inaccurate, Willis reported to the police captain that Boone had kicked Hill in the face. Simonson made a similar report to her sergeant.

---

[3]Hill's left front incisor and left second incisor were broken at their roots and were later surgically removed, along with the right front incisor, which had been damaged by the kick.

A grand jury returned a two-count superseding indictment in May 2014, charging Boone with depriving Hill of the right to be free from the use of unreasonable force by a law enforcement officer, in violation of 18 U.S.C. § 242, and with knowingly falsifying an arrest incident report with the intent to obstruct justice, in violation of 18 U.S.C. § 1519. At the trial held later that year, the jury was unable to reach a verdict on the unreasonable-force count, but it found Boone not guilty of the obstruction-of-justice count. The district court accepted the jury's verdict and declared a mistrial on the unreasonable-force count. A second trial was scheduled for early 2015.

Before the second trial began, the government moved to admit evidence of prior bad acts to prove intent, knowledge, motive, and absence of mistake under Rule 404(b) of the Federal Rules of Evidence. Following a hearing, during which the government presented evidence that Boone had used unreasonable force on an arrestee in January 2009 and thereafter tried to conceal his wrongdoing, the district court granted the government's motion, and the case proceeded to trial.

The second trial began in March 2015. Boone's primary defense was that he did not act willfully, which the court defined as "voluntarily and intentionally, and with the specific intent to do something the law forbids – that is, with a bad purpose to disobey or disregard the law." Boone testified that he "didn't mean to strike [Hill] in the head, and if [he] did, it was not intentional, and [he] didn't mean to hurt him." He explained that initially he thought that he "had hit [Hill] somewhere in the arm or the upper shoulder area," but he began to have doubts after "they rolled [Hill] over and . . . there was some blood on [Hill's] face." Boone also testified that when he saw the gash on Hill's eyebrow, his "first thought was, wow, that looks like maybe something like boot laces or the side of your boot may cause, and [Boone] knew that [he] had struck [Hill] in the upper shoulder, and [Boone] started to wonder if maybe [he had] hit [Hill] in the head, too." Boone did not admit that he had kicked Hill in the face, testifying on cross-examination that he "believed [he] hit him in the upper

-5-

shoulder and that [he] may have hit him in the face" and that "[i]t's never been proven to me."

Officers Simonson, Kenkel, Willis, and Klinge testified that they were trying to handcuff Hill when Boone arrived. Although they were outfitted with a variety of weapons, they used only hands-on force to control Hill, testifying that no greater force was necessary to effectuate the arrest. The officers further testified that Boone's kick was a straight kick to Hill's face, not a sweep kick to Hill's left shoulder. The dash-cam video from Willis and Klinge's squad car was played for the jury. It showed Willis's tackle, the officers' attempt to handcuff Hill, and Boone's running kick.

The government also presented evidence of Boone's January 14, 2009, use of force against Dawn Dooley. Officer Chris Latcham testified that after Dooley was arrested for operating a vehicle while intoxicated (OWI), Latcham and Boone arrived to transport her to the police station. Latcham described Dooley as "being resistive" and stated that she had kicked him. Dooley slipped on the ice, and either Latcham or Boone grabbed her arm as she fell. The officers eventually placed Dooley in Latcham's squad car and transported her to the police station, where she was detained in an OWI room. Austin Hill (no relative of Orville Hill) also had been arrested for OWI that night and was being detained at the police station, in an area described as "the bullpen."

Latcham testified that while Dooley was seated in a chair in the OWI room, Boone grabbed her arm "[i]n an upward motion," lifting it for approximately ten seconds, while Dooley cried for help. Austin Hill testified that after he heard a woman yelling for help, he looked through a window in a door at the end of the bullpen, where he could see into the OWI room. Austin Hill testified that he saw a woman on the floor of the room and Boone standing over her with "his shoulders thrusting back." According to Austin Hill, Boone "assault[ed] her with his hands,"

-6-

as another officer stood in the OWI room and did nothing. The jury was shown a video that depicted Austin Hill walking to the door and looking through the window, as a woman's voice yells, "Help me!" The video later shows Latcham escorting Dooley through a door, past the bullpen where Austin Hill was detained, and into a second OWI room. Boone exits the same door shortly thereafter. Austin Hill identified Dooley as the woman who was yelling and Boone as the officer who had assaulted her.

The video of the bullpen area also captured hushed conversations between Latcham and Boone, during which Boone stated that he needed to write a use-of-force report. Boone then checked with another officer to see if the video camera in the bullpen was recording. After the officer said that he had not turned it on, Boone told Latcham what he intended to include in the report: that Dooley had resisted arrest, Latcham grabbed her right arm, Dooley fell, and she injured her right shoulder. Latcham responded, "Yeah." At trial, however, Latcham testified that he knew that Boone's description of the force used against Dooley was inaccurate or incomplete. Boone testified that he wrote an arrest incident report, but the Des Moines Police Department had no record of any such report regarding Boone's use of force against Dooley.

A video of the second OWI room showed Dooley sitting in a chair, crying, and trying to wrap her jacket around her left arm.[4] When asked at trial if he knew why Dooley was crying, Latcham replied, "I believe it's from being grabbed in the other OWI room." Near the end of the video, Dooley states that an unidentified person "hurt [her] arm," that she thought "he did break my arm," and that "officers broke it." The district court overruled Boone's hearsay objection to the video.

---

[4]Although video cameras were installed in both OWI rooms, there was no video recording of the first OWI room.

Before the case was submitted to the jury, the district court issued a limiting instruction, explaining that the jury could consider the evidence of the Dooley incident to "help you decide [Boone's] intent, knowledge, motive, or absence of mistake," but not as evidence that Boone committed the crime charged in the instant case. Following the entry of the guilty verdict, Boone was sentenced to 63 months' imprisonment.

## II.  Discussion

Boone argues that the district court erred in admitting evidence of his use of force against Dooley. We review for abuse of discretion a district court's decision to admit prior bad act evidence, and we "reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Yielding, 657 F.3d 688, 701 (8th Cir. 2011) (internal quotation marks and citation omitted). Although evidence of a prior bad act is not admissible to show a defendant's propensity to commit criminal acts, it is admissible under Rule 404(b) to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Evidence of a prior bad act "is admissible if (1) it is relevant to a material issue, (2) it is similar in kind and not overly remote in time to the charged offense, (3) it is supported by sufficient evidence, and (4) its potential prejudice does not substantially outweigh its probative value." United States v. Ellis, 817 F.3d 570, 579 (8th Cir. 2016).

Evidence of Boone's use of unreasonable force against Dooley was relevant to prove that Boone acted willfully when he deprived Hill of his right to be free from unreasonable force. To prove willfulness, the government was required to show that Boone acted with specific intent to deprive Hill of his constitutional rights. See 18 U.S.C. § 242; United States v. Jackson, 235 F.2d 925, 928 (8th Cir. 1956) (citing Screws v. United States, 325 U.S. 91, 103 (1945)). By testifying that he did not intend

-8-

to hurt Hill or kick him in the head, but was instead trying to assist his fellow officers in securing Hill, Boone placed his state of mind squarely at issue and rendered evidence of his prior use of unreasonable force probative of his intent, knowledge, motive, and absence of mistake in his use of force against Hill. See United States v. Brugman, 364 F.3d 613, 620-21 (5th Cir. 2004) (holding that the district court did not abuse its discretion in admitting evidence of a border patrol agent's prior use of excessive force to prove the agent's intent in the charged offense).

Boone argues that the Rule 404(b) evidence should not have been admitted because his alleged use of unreasonable force against Dooley was neither similar in kind nor close in time to the use of force against Hill. Boone focuses on the differences in the manner and degree of force used and in the contexts of the two incidents. Whatever these differences, we conclude that they did not render the Dooley incident evidence inadmissible, for when admitted to show intent, "the prior acts need not be duplicates." United States v. Walker, 470 F.3d 1271, 1275 (8th Cir. 2006). In both incidents, Boone used more force than necessary to subdue an individual who was acting erratically or disruptively. He then completed reports that failed to accurately document his use of force. We thus conclude that the circumstances of the prior act and of the charged crime were sufficiently similar to support an inference of criminal intent.

As for Boone's argument that the remoteness of his 2009 use of force against Dooley rendered it inadmissible, "[t]here is no absolute rule about remoteness in time, and we apply a reasonableness standard based on the facts and circumstances of each case." Yielding, 657 F.3d at 702; see also Walker, 470 F.3d at 1275 ("[T]here is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent." (quoting United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995)). In light of their above-described similarities, we conclude that the district court did not abuse its discretion in admitting the evidence regarding the Dooley incident notwithstanding the four-year lapse of time between it and the Hill incident.

Boone next argues that the government did not present sufficient evidence to establish that he had used unreasonable force against Dooley or that he had tried to conceal any use of force. "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." United States v. Armstrong, 782 F.3d 1028, 1034 (8th Cir. 2015) (quoting Huddleston v. United States, 485 U.S. 681, 689 (1988)). When relevance is conditioned on whether a fact exists, the government must introduce proof "sufficient to support a finding that the fact does exist." Id. (quoting Fed. R. Evid. 104(b)). When the district court decides whether the proof is sufficient, it "does not weigh the evidence or make credibility determinations but instead 'simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact[—here, whether Boone used unreasonable force on Dooley—]by a preponderance of the evidence.'" Id. (quoting Huddleston, 485 U.S. at 690).

Boone argues that Austin Hill was not a credible witness. Again, the district court does not make credibility determinations, and in light of Austin Hill's and Officer Latcham's testimony that a person could view the OWI room from the window in the bullpen door, the district court properly allowed the jury to decide whether Austin Hill had witnessed any use of force by Boone against Dooley.

Boone also argues that there was no evidence that the force he used was unreasonable. We disagree, for a jury could credit Austin Hill's testimony that Boone was "assaulting [Dooley] with his hands" as she lay on the floor, or believe Latcham's testimony that Dooley was seated when Boone grabbed her arm and that she later cried because Boone had injured her. Moreover, a jury could reasonably interpret the whispered conversation between Boone and Latcham as an attempt to conceal Boone's use of unreasonable force on Dooley, fair inference being that Dooley had done nothing in the OWI room to necessitate Boone's use of force against her.

-10-

Finally, Boone argues that the probative value of the Dooley evidence was substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403; Ellis, 817 F.3d at 579. As set forth above, however, the evidence of Boone's use of unreasonable force against Dooley and his attempt to conceal that use of force had significant probative value on whether Boone had acted willfully when he kicked Hill in the face. We conclude that the district court's limiting instruction adequately minimized the danger of any unfair prejudice that may have otherwise arisen and that the district court thus did not abuse its discretion in admitting the Rule 404(b) evidence.

Boone next argues that the district court abused its discretion in admitting the video of the second OWI room, which revealed Dooley as crying, complaining of pain, and trying to wrap her jacket around her left arm. Boone contends that the following statements by Dooley were inadmissible hearsay: "He hurt my arm," "I think he did break my arm," and "officers broke it." Even assuming that these statements were not admissible as excited utterances or as present sense impressions, see Fed. R. Evid. 803(1)-(2), any error in admitting the statements was harmless, see Fed. R. Crim. P. 52(a), in light of both the video and the testimonial evidence of the force that Boone had used against Hill. See United States v. Marrowbone, 211 F.3d 452, 455 (8th Cir. 2000) ("An erroneous evidentiary ruling does not [a]ffect a substantial right and is harmless error if, after reviewing the entire record, we determine that the error did not influence or had only a slight influence on the verdict.").

The judgment is affirmed.

_____