# United States Court of Appeals
### For the Eighth Circuit

———————————————

## No. 22-2701

———————————————

United States of America

*Plaintiff - Appellee*

v.

Tou Thao

*Defendant - Appellant*

------------------------------

Association of American Physicians and Surgeons Educational Foundation

*Amicus on Behalf of Appellant(s)*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: June 16, 2023
Filed: August 4, 2023

——————————

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

——————————

KOBES, Circuit Judge.

Tou Thao is one of four former Minneapolis Police Department (MPD) officers involved in the death of George Floyd. Thao was convicted of two counts of deprivation of rights under color of law resulting in bodily injury and death, 18 U.S.C. § 242. He appeals the district court's[1] denial of his motions for acquittal and a mistrial. We affirm.

## I.

On May 25, 2020, MPD was dispatched to a convenience store after getting a report that a man tried to pay with a counterfeit $20 bill. Officers Alexander Kueng and Thomas Lane got to the scene first and found the man, Floyd, in a parked car outside the store. They took Floyd out of the car and handcuffed him, but when they tried to put him in their squad car, he resisted and said he was claustrophobic. While Lane and Kueng were struggling to get Floyd in the squad car, Officers Derek Chauvin and Thao arrived at the scene. Chauvin helped Lane and Kueng get Floyd into a prone position on the ground. Chauvin then restrained Floyd by placing a knee on his neck, while Kueng and Lane held down Floyd's arms and legs. Floyd repeatedly said that he couldn't breathe. Thao suggested they use a "hobble" to restrain Floyd, which would involve placing Floyd on his side and binding his feet to his waist. Thao grabbed the hobble from the squad car and asked if the other officers wanted to use it, but Chauvin declined.

Lane radioed for medical assistance and told the dispatcher that the situation was a "Code 2," which meant there was no emergency and EMS didn't need to use sirens or lights. About two minutes later, Thao asked if EMS was called at "Code 3," which meant that EMS should arrive quickly, using sirens and lights. Lane said EMS had been called at Code 2 but that "we can probably step it up." Thao then changed the situation's status to Code 3. Thao later testified that he thought that

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Floyd was experiencing excited delirium from drugs and needed to be medically sedated. For the next couple of minutes, Thao stood near the officers and Floyd.

A few minutes later, a crowd began to gather on the nearby sidewalk. Thao stood between the crowd and the officers restraining Floyd, who were off to his right. Thao tried to keep the crowd on the sidewalk as they yelled at the officers to get off Floyd. Meanwhile, Thao's body camera turned between Floyd and the crowd multiple times. Approximately five minutes into the restraint, Floyd stopped talking. Shortly after, a woman in plainclothes approached Thao claiming to be a Minneapolis firefighter. She asked multiple times whether Floyd had a pulse. About six minutes into Floyd's restraint, Thao moved away from Floyd and closer to the crowd, which continued to insist that Chauvin get off Floyd's neck and that officers check his pulse. Thao's body camera again turned toward Floyd a few times. The officers continued to restrain Floyd until EMS arrived at the scene. Upon their arrival, EMS determined Floyd had no pulse. He was later declared dead at the hospital. Chauvin had his knee on Floyd's neck for approximately nine minutes.

Thao and the other three officers were criminally charged for the deprivation of rights under color of law resulting in bodily injury and death under 18 U.S.C. § 242. A jury convicted Thao on two counts: while acting under color of law, (1) Thao willfully deprived Floyd of his right to be free from unreasonable seizure by failing to intervene in Chauvin's use of unreasonable force, and (2) Thao willfully deprived Floyd of his right to be free from a police officer's deliberate indifference to his serious medical needs. Thao appeals, arguing that there was insufficient evidence to convict him and that prosecutorial misconduct deprived him of his right to a fair trial.

II.

We first address Thao's challenge to the sufficiency of the evidence. We review *de novo* and will affirm the jury's verdict if "a reasonable juror could have found the defendant guilty of the charged conduct beyond a reasonable doubt."

*United States v. St. John*, 716 F.3d 491, 493 (8th Cir. 2013) (citation omitted). In making this determination, "we view the evidence in the light most favorable to the Government, resolving evidentiary conflicts in favor of the Government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Cross*, 888 F.3d 985, 990 (8th Cir. 2018) (cleaned up).

Thao specifically argues that no reasonable jury could have found that he had the requisite *mens rea* to commit the crimes. Section 242 makes it a crime to "*willfully* subject[] any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 18 U.S.C. § 242 (emphasis added). To prove willfulness, the Government had to show that Thao acted with specific intent to deprive Floyd of his constitutional rights. *See United States v. Boone*, 828 F.3d 705, 711 (8th Cir. 2016). This includes "act[ing] in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite." *Screws v. United States*, 325 U.S. 91, 105 (1945). "In simpler terms, 'willful[]' in § 242 means either particular purpose or reckless disregard. Therefore, it is enough to trigger § 242 liability if it can be proved—by circumstantial evidence or otherwise—that a defendant exhibited reckless disregard for a constitutional or federal right." *United States v. Johnstone*, 107 F.3d 200, 208–09 (3d Cir. 1997) (discussing *Screws*).

We examine whether the evidence was sufficient to meet this bar for Thao's failure to intervene and deliberate indifference charges.

A.

We begin with the failure to intervene charge. To prove Thao acted willfully, the Government produced evidence that Thao knew from his training that (1) Chauvin's use of force on Floyd was unreasonable and (2) he had a duty to

intervene in another officer's use of unreasonable force.[2]  *See United States v. Broussard*, 882 F.3d 104, 110 (5th Cir. 2018) ("A law enforcement officer may be held liable under Section 242 for the substantive offense if the evidence shows awareness of a constitutional violation and no effort to prevent the violation."); *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) (holding that "evidence of departmental policies can be relevant to show intent in § 242 cases"); *United States v. Rodella*, 804 F.3d 1317, 1338 (10th Cir. 2015) (holding that evidence of police training was relevant to show that an officer's action was unlawful and thus relevant to show that he acted willfully).  Even Thao himself admitted that officers aren't supposed to use force if a detainee is no longer resisting and that officers are supposed to stop excessive force if they see it happening.

Thao points to several facts that, he argues, show that he did not act willfully. First, Thao notes that he suggested using the hobble, which would have put Floyd in the side-recovery position.  But Thao made this suggestion within the first minute of Floyd's restraint, so it doesn't account for his failure to intervene for the remaining eight minutes Chauvin had his knee on Floyd's neck.  Thao also points to his own testimony that he thought Floyd was experiencing excited delirium, so he believed Floyd needed to be restrained and sedated.  But the jury heard testimony that, under MPD policy, neck restraints are inappropriate once the detainee stops resisting, *even when* a detainee is experiencing excited delirium.  Last, Thao argues that he testified that his body camera—which picked up footage of Chauvin and the other officers restraining Floyd—may have recorded things he himself did not see.  But the jury was free to not credit Thao's testimony. *See United States v. Anderson*, 78 F.3d 420, 423 (8th Cir. 1996) ("It [is] for the jury to resolve conflicting testimony and determine witness credibility."); *United States v. Johnson*, 39 F.4th 1047, 1052 (8th

---

[2]MPD policy states that "[i]t shall be the duty of every sworn employee present at any scene where physical force is being applied to either stop or attempt to stop another sworn employee when force is being inappropriately applied or is no longer required."  An MPD inspector—and former commander of the MPD training division—testified that this policy makes no distinction between officers of different ranks or experience.

Cir. 2022) ("A jury's credibility determinations are well-nigh unreviewable on appeal, even when the standard of proof is beyond a reasonable doubt." (citation omitted)).

Viewing the evidence in the light most favorable to the Government, we hold there was sufficient evidence that Thao acted willfully on this charge.

## B.

We next turn to the second charge: Thao's deliberate indifference to Floyd's serious medical needs. At trial, MPD's medical support coordinator testified that officers have a duty to render medical aid to a person in their custody and that when someone has no pulse, officers are trained to request an ambulance and begin CPR. She also testified that it is inconsistent with MPD training to keep a person in the prone position while he's handcuffed and compliant. Rather, officers are trained to position a detainee on his side or to a sitting or standing position when he can't breathe. The jury also heard testimony that if a detainee doesn't immediately gain consciousness following a neck restraint, he should be put in the side-recovery position and the officer should check his airway and pulse and render first aid. Thao himself admitted that he knew it is a "red flag" if somebody in custody suddenly stops talking. Moreover, body camera footage shows bystanders repeatedly urging Thao and the other officers to check Floyd's pulse.

Thao notes that he suggested putting Floyd in a hobble restraint, which would have put Floyd in the side-recovery position, and that he upped the call for EMS to Code 3 so that they would arrive as quickly as possible. He also argues that he was not aware of Floyd's critical condition because he was occupied with crowd control and assumed that if Floyd needed CPR, the three other officers would perform it. While a jury could reasonably take these facts and inferences to find that Thao did not act willfully, "reversal is not appropriate even where the evidence rationally supports two conflicting hypotheses, and is required only if no reasonable jury could

-6-

have found guilt beyond a reasonable doubt." *United States v. Blakeney*, 876 F.3d 1126, 1131 (8th Cir. 2017) (cleaned up).

We agree with the district court that the evidence on this count is "not overwhelming" but nonetheless hold that a reasonable jury could find that Thao acted willfully. Given Thao's knowledge and training, a jury could reasonably find Thao acted willfully by failing to give Floyd medical aid. *See Broussard*, 882 F.3d at 110; *Proano*, 912 F.3d at 439; *Rodella*, 804 F.3d at 1338.

III.

Thao argues that prosecutorial misconduct interfered with his right to a fair trial. We review the district court's denial of a mistrial for an abuse of discretion. *United States v. Sherman*, 440 F.3d 982, 987 (8th Cir. 2006). "On appeal, we will reverse for prosecutorial misconduct only if the conduct, even if improper, so prejudiced the defendant that he was unable to obtain a fair trial." *United States v. Barrera*, 628 F.3d 1004, 1007 (8th Cir. 2011) (cleaned up). That is, to amount to *reversible* prosecutorial misconduct, "the prosecutor's remarks or conduct must have been improper" and "such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Conrad*, 320 F.3d 851, 855 (8th Cir. 2003).

Thao points to numerous instances of alleged misconduct, arguing that the Government put on duplicative evidence and testimony, violated pretrial orders, made inappropriate arguments in its opening and closing statements, and more. But rather than explaining why the Government's actions were improper, Thao simply points to several instances where defense counsel objected to the Government's actions and the court sustained the objection. Because these arguments weren't meaningfully developed, we can consider them waived. *See Meyers v. Starke*, 420 F.3d 738, 743 (8th Cir. 2005) ("To be reviewable, an issue must be presented in the brief with some specificity. Failure to do so can result in waiver."); *Molasky v. Principal Mut. Life Ins. Co.*, 149 F.3d 881, 855 (8th Cir. 1998) ("[I]t is not this

court's job to research the law to support an appellant's argument." (citation omitted)). But even assuming misconduct was present, it was not prejudicial enough to require reversal.

To determine the prejudicial effect of prosecutorial misconduct, we examine "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." *Conrad*, 320 F.3d at 855 (citation omitted).

First, any misconduct must be put in context of the length of the trial. While Thao alleges a great deal of misconduct, this was a 21-day trial that included over 30 witnesses. *See United States v. Bowie*, 618 F.3d 802, 816 (8th Cir. 2010) (holding that 24 instances of leading questions over a 9-day trial was not cumulative enough to prejudice the defendant's trial).

Beyond that, the district court's curative actions helped remedy any potential prejudice that Thao faced. In most instances where Thao alleges misconduct, the district court sustained defense counsel's objections—often preventing any prejudicial evidence from coming in. *See United States v. Fenner*, 600 F.3d 1014, 1022 (8th Cir. 2010) (explaining that the defendant was not prejudiced by the Government's use of leading questions because the district court sustained objections to all but two of them and the Government rephrased). For example, much of the misconduct Thao alleges is for attempting to elicit duplicative testimony or violating pretrial orders while questioning witnesses. But the district court often sustained defense counsel's objections to these questions before the witnesses could answer.

The district court also offered curative instructions when necessary. For instance, the district court instructed the jury—both before evidence was offered and after the close of evidence—that it could not consider any evidence to which objections were sustained or it was instructed to disregard. Finally, we note the bulk of Thao's misconduct allegations come from the Government's closing argument.

But the district court instructed the jury that what was said in closing arguments is not evidence. *See United States v. Eagle*, 515 F.3d 794, 806 (8th Cir. 2008) ("A district court's instruction that closing arguments are not evidence is a curative action that serves to alleviate any risk of prejudicial impact.").

We conclude that any prosecutorial misconduct was not so prejudicial as to warrant a new trial. *See United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir. 1985) (explaining that "not every impropriety of argument calls for a new trial or for a reversal of a judgment of conviction" and that "appellate courts should not reverse for such improprieties unless persuaded that they probably prejudiced the defendant and that the prejudice was not removed effectively by the trial judge" (citation omitted)). The district court did not abuse its discretion in denying Thao's motion for a mistrial.

## IV.

We conclude that there was sufficient evidence for the jury to find that Thao acted willfully on both § 242 counts and that any prosecutorial conduct did not deprive Thao of his right to a fair trial. The district court is affirmed.

_____